RECEIVED

JUN 2 7 2005

NWA

# CONVENTION & TRADE SHOW AGREEMENT

# TEAMSTERS LOCAL 85



## Term of Agreement

## April 1, 2005 – March 31, 2008

# AGREEMENT

## By and Between

## GES EXPOSITION SERVICES

## FREEMAN DECORATING (SULLIVAN TRANSFER)

## CHAMPION EXPOSITION

## And

## TEAMSTERS LOCAL 85

## Term of Agreement 4/1/2005 - 3/31/2008

### Preamble

This Agreement is made and entered into as of April l, 2005, by and between GES Exposition Services, Freeman Decorating (Sullivan Transfer) and Champion Exposition, hereinafter referred to as the "Employer" or "Company" and the Brotherhood of Teamsters and Auto Truck Drivers, Local 85, hereinafter referred to as the "Union".

## ARTICLE I. UNION SECURITY

### Section l. Recognition

The Employer hereby recognizes the Union as the exclusive bargaining representative for all employees covered by this Agreement.

## Section 2. Union Membership

All employees shall apply for membership in the Union on or after the thirtieth (30th) day following the beginning of their employment or the effective date of this Agreement, whichever is later, and as a condition of employment shall maintain their membership in the Union in good standing.

## Section 3.  Scope of Agreement

This Agreement shall cover all drivers, forklift operators, hostlers, warehouse workers, helpers and foreman of such employee's, as they are classified in Article XII, who perform the work of loading, unloading and transferring freight or deco material as enumerated in Article X, Section 1, of this Agreement using trucks, vans, forklifts and related equipment (hand trucks, dollies, electric carts, etc.) under the control of the Employer when used in performing work covered by this Agreement. The Operation of all trucks and vans with a capacity of carrying in excess of 1.5 tons of deco material or freight, for purposes of producing Trade Shows, Conference's and Conventions in accordance with this Agreement and current work practices, shall be performed by employee's covered by this Agreement.

The terms of this agreement should be applicable to Employees of Employer's performing work within the jurisdictional boundaries of Local Union 85 and within the radius of two hundred (200) continuous miles outside of the jurisdictional boundaries of Union 85 in effect on July 1, 1989. This Section shall become effective on July 1, 1989.

## Section 4.  Hiring Procedure

## Hiring and Referral

Whenever the Employer requires workers in addition to their regular seniority employees they shall notify the Local 85 hiring hall by telephone or other electronic means stating the location, start time, approximate duration of the job, classification and number of workers required. The employer may request 50% of the number of required workers by name. In the event the employer requires workers possessing special skills, the Union will dispatch such qualified workers with the required skills and abilities in addition to the employers 50% call by name. The Union, in accordance with its Hiring Hall procedures, shall dispatch the balance of workers and notify the Employer of their names by facsimile or e-mail. The Employer shall notify the Union of the names of all regular seniority employees scheduled to work on a daily basis. Such notification shall be by facsimile or e-mail by the end of each business day for the following regular workday.

contribution, with the employee contribution coming from either the wage or pension increase scheduled for that year, at the direction of the Union.

The calculation for purposes of determining the hourly rate shall be based upon 173.3 hours worked per month.

The Maintenance of Benefits provision provided above in Section 3(a) shall not apply to RSP benefits. Section 4, Employer contributions shall apply to the RSP Program.

## Section 4.  Employer Contributions.

If any seniority employee is absent because of injury or illness, on or off the job, the Company shall continue to make the required contributions for the month in which the illness or injury occurs, until such employee returns to work, however, such contributions shall not be paid for a period of more than twelve (12) months.

If any casual employee is absent because of injury on the job, the Company shall continue to make the required contributions for the month in which the injury occurred, provided, such employee was eligible for benefits from the fund and had worked eighty (80) or more hours in the month he was injured or the prior month. Such contribution shall be paid until such employee returns to work, however, such contributions shall not be paid for a period of more than twelve (12) months.

## Section 5.  Miscellaneous

Article XVI (Health and Welfare and Pension Delinquencies) including the procedure for legal and economic action, shall apply to any Employer delinquency in payments.

# ARTICLE XV.  PENSION PLAN

## Section l.  Employer Contributions.

The Employer shall contribute to the Western Conference of Teamsters Pension Trust Fund for each regular, casual or probationary employee covered by this Agreement, for each compensable hour up to a maximum of three thousand hours (3000) hours per calendar year, the following amounts:

| Effective Date: | Total: | Base: | PEER: | Increase: |
|---|---|---|---|---|
| April 1, 2005 | $6.88 | $ .42 | $6.46 | $.25 |
| April 1, 2006 | $7.13 | $ .43 | $6.70 | $.25 |
| April 1, 2007 | $7.38 | $ .45 | $6.93 | $.25 |

*Peer*  *Base*

*see corrected by DATED 9/15/05 sent By Local 85*

Contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan. The additional contribution for the PEER must at all times be 6.5% of the basic contribution and cannot be decreased at any time.

The Company agrees to remit these monies to the appropriate area administrative office by the date designated.

## Section 2. Payments During Period of Absence

If an employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of one (l) month or four (4) weeks after contribution for active employment ceases.

If any employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work; however, such contribution shall not be paid for a period of more than twelve (12) months beginning with the first month after contribution for active employment ceases. If any employee is granted a leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Pension Fund during the period of absence. The acceptance of such monies is at the sole discretion of the Board of Trustees.

## Section 3. Definition of Regular Employee

A regular employee, for the purpose of this Agreement, shall be any employee on the Regular Seniority List as defined by this Agreement.



# ARTICLE XV.  PENSION PLAN

## Section 1.  Employer Contributions.

The Employer shall contribute to the Western Conference of Teamsters Pension Trust Fund for each regular, casual or probationary employee covered by this Agreement, for each compensable hour up to a maximum of three thousand hours (3000) hours per calendar year, the following amounts:

| Effective Date: | Total: | PEER: | BASE: | Increase: |
|---|---|---|---|---|
| April 1, 2005 | $6.88 | $ .42 | $6.46 | $.25 |
| April 1, 2006 | $7.13 | $ .43 | $6.70 | $.25 |
| April 1, 2007 | $7.38 | $ .45 | $6.93 | $.25 |

Contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan.  The additional contribution for the PEER must at all times be 6.5% of the basic contribution and cannot be decreased at any time.

The Company agrees to remit these monies to the appropriate area administrative office by the date designated.

## Section 2.  Payments During Period of Absence

If an employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of one (l) month or four (4) weeks after contribution for active employment ceases.

If any employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work; however, such contribution shall not be paid for a period of more than twelve (l2) months beginning with the first month after contribution for active employment ceases.  If any employee is granted a leave of absence, the Employer shall collect from said employee, prior to the leave of absence being effective, sufficient monies to pay the required contributions into the Pension Fund during the period of absence.  The acceptance of such monies is at the sole discretion of the Board of Trustees.

RECEIVED
SEP 1 5 2005
NWA

## Section 3.  Definition of Regular Employee

A regular employee, for the purpose of this Agreement, shall be any employee on the Regular Seniority List as defined by this Agreement.

## Section 4.  Delinquent Contributions

Action for delinquent contributions may be instituted by the Local Union, the Area Conference or the Trustees.  The employer, if delinquent, must also pay all attorney fees and costs of collection.

## Section 5.  Posting Notice

The Employer shall post on employees' bulletin board a duplicate copy of the reporting form sent to the Administrator's Office of payment made to the Western Conference of Teamsters Pension Trust Fund on behalf of the employees at the time payments were made.

## Section 6.  Supplemental 401k Plan.

As soon as practicable, but no later than the first payday in 1999, the Employer shall deduct up to a maximum amount provided by law and applicable Internal Revenue Service regulations from each affected regular seniority employee's pay check and forward such amount to the Western Conference of Teamsters 401k plan, or other 401k plan designated by the Union, for credit to the individual employees account.

Each regular seniority employee who elects to participate in the 401k plan shall present to the Employer the appropriate voluntary enrollment form within the designated enrollment period. Each participating employee shall indicate a percentage of wages to be deducted, as determined by the plan.  All such contributions to the 401k plan under this Agreement shall consist solely of each employees voluntary payroll deductions. The only cost to the Employer shall be the related payroll processing.

The Employer and Union shall execute the required trust documents for participation in the plan.

# ARTICLE XVI. HEALTH & WELFARE PENSION DELINQUENCIES

Notwithstanding anything herein contained, in the event any Employer is delinquent at the end of a period in the payment of his/her contribution to the Health and Welfare or Pension Fund or Funds, required to be paid under this Agreement or any supplement hereto, in accordance with the rules and regulations to the Trustees of such funds, after the proper official of the Union has given five (5) days' written notice excluding Saturdays, Sundays and holidays to the Employer of such delinquency in

payments, the employees or the Union shall have the right to take any legal or economic action they see fit against such Employer to collect such delinquent amounts.

Whether or not such action is taken, the Employer shall be liable to the Trustees of the Health and Welfare and Pension Fund or Funds for all delinquent amounts or to the employees for any and all benefits under any Health and Welfare plan which the employee would have received if the Employer had not been delinquent in the payment of such contributions. The Trustees shall have the right to bring legal action to collect delinquent amounts or the employee shall have the right to bring legal action to obtain payment of such benefits. In any such action the Employer shall pay: (a) court costs and a reasonable attorney's fee; and (b) in the case of the collection of delinquent amounts by the Trustees or their agent, which collection does not require the institution of a lawsuit, the collection costs involved.

The sole responsibility of the Employer shall be to pay the indicated contributions into the Health and Welfare and Pension Fund or Funds required to be paid into under this Agreement and herein described.

## ARTICLE XVII. EMERGENCY REOPENING

In the event of a declaration of war by the Congress of the United States, either party may reopen this Agreement upon sixty (60) days' written notice and request renegotiation of matters dealing with the wages and hours. Upon failure of the parties to agree in such negotiation, either party shall be permitted all lawful economic, legal recourse to support their request for revisions. If Governmental approval of revisions should become necessary, all parties will cooperate to the utmost to attain such approval.

The parties agree that the notice provided herein shall be accepted by all parties as compliance with the notice requirements of applicable law, so as to permit economic action at the expiration thereof.

## ARTICLE XVIII. GARNISHMENTS

The Employer may take disciplinary action against employees having wage garnishments, including discharge, consistent with federal and state laws.

# ARTICLE XXIII. ENTIRE AGREEMENT

This Agreement constitutes the sole and entire existing Agreement between the parties hereby and supersedes all prior agreements or commitments, oral or written, between the Employer or the Union, or the employee, and expresses all the obligations of and restrictions imposed upon each of the respective parties during its term. The parties hereby mutually release each other from any and all other obligations to each other or the employees. This Agreement may be altered or amended only by written agreement between the parties hereto. The waiver of any breach hereof or any term or condition herein by either party shall not constitute a precedent for the future waiver of any breach, term or condition, nor deprive such party of the full benefit of rights hereunder pertaining to any breach, term or condition.

# ARTICLE XXIV. TERM OF AGREEMENT

This Agreement shall become effective April 1, 2005, and shall continue in full force and effect, except as otherwise provided herein, to and including the 31st day of March, 2008 and shall be considered as renewed from year-to-year thereafter unless either party hereto shall give written notice to the other of its desire to have the same modified, and such notice must be given at least sixty (60) days to the expiration of this Agreement.

In the event timely notice for negotiating contract modifications is given by either party, the other party shall make itself available for negotiations upon the request of the party giving notice, and a good faith effort shall be made by both parties to conclude such negotiations before the expiration date of this Agreement.

In Witness Whereof, the parties hereto have caused this Agreement to be executed (by their duly authorized representative.

GES EXPOSITION SERVICES

X:_____    Date:_____
NAME and TITLE:
ANNE HANSON, EXECUTIVE VICE PRESIDENT, LABOR RELATIONS


FREEMAN DECORATING COMPANY
(SULLIVAN TRANSFER)

X:_____    Date: 6-2-05
NAME and TITLE:
GLENN WYER, GENERAL MANAGER

PAGE 35
5/2005-pbk opeiu 3 afl cio (32)

CHAMPION EXPOSITION SERVICES

X: _Raymond Valentino_    Date: _6/8/05_
NAME and TITLE:
RAYMOND VALENTINO, DIRECTOR OF OPERATIONS


TEAMSTERS LOCAL 85:


_William Cromartie_                    _Van Beane_
William Cromartie, President              Van Beane, Secretary Treasurer
DATE:  5/31/05                            DATE: 5/31/05

BLAINE CONVENTION

SHEPPARD DECORATING

_____

DATE:_____

_____

DATE:_____

UNION PAYROLL

PACIFIC CONVENTION

_____

DATE:_____

*Susan Rogers*

DATE: 7/14/2005

WILLWORK

EVENT PRODUCTION INC.

_____

DATE:_____

_____

DATE:_____

CURTIN CONVENTION

_____

_____

DATE:_____

_____

DATE:_____

_____

_____

DATE:_____

_____

DATE:_____